# EXHIBIT A

# SUMMONS - CIVIL

JD-CV-1 Rev. 9-14
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

A.D. 3.00
113011

See other side for instructions

| | |
|---|---|
| ☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. | TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint. |
| ☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. | |
| ☐ "X" if claiming other relief in addition to or in lieu of money or damages. | |

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* *(C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* | | |
|---|---|---|---|---|
| **69 Brooklyn Street, Rockville, CT 06066** | ( 860 )896-4920 | **February** Month | **21**, Day | **2017** Year |

| ☒ Judicial District | G.A. | At *(Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349)* | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | **Rockville** | Major: **C** | Minor: **20** |

## For the Plaintiff(s) please enter the appearance of:

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| **Jeffrey Richard Lindequist, One Monarch Place, Suite 2220** | **435042** |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| ( 413 ) 736-4101 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* jlindequist@mdparkerlaw.com |
|---|---|---|

| Number of Plaintiffs: **2** | Number of Defendants: **3** | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| **First Plaintiff** | Name: **John Celentano** Address: **54 Blair Road, Willington, CT 06279** | P-01 |
| **Additional Plaintiff** | Name: **Tanessa Celentano, f/k/a Tanessa Morency** Address: **54 Blair Road, Willington, CT 06279** | P-02 |
| **First Defendant** | Name: **Pacific Specialty Insurance Company** Address: **6401 Haven Avenue, Menlo Park, CA 94025** | D-01 |
| **Additional Defendant** | Name: **Tower Insurance Company of New York** Address: **120 Broadway, New York, NY 11027** | D-02 |
| **Additional Defendant** | Name: **Amica Mutual Insurance Company** Address: **One Hundred Amica Way, Lincoln, RI 02940** | D-03 |
| **Additional Defendant** | Name: Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left **Jeffrey R. Lindequist** | Date signed **1/26/2017** |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. | |
| c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | ATTEST: A TRUE COPY CHARLES LILLEY CONNECTICUT MARSHAL HARTFORD COUNTY |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date **01/26/2017** |
|---|---|---|

Name and address of person recognized to prosecute in the amount of $250
**See Attached Certificate of Financial Responsibility.**

| Signed *(Official taking recognizance; "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Date | Docket Number |
|---|---|---|---|

(Page 1 of 2)

RETURN DATE:  FEBRUARY 21, 2017    :    SUPERIOR COURT

                                      :

JOHN CELENTANO and                :    J.D. OF TOLLAND
TANESSA CELENTANO, f/k/a
TANESSA MORENCY                :    AT ROCKVILLE

                                        :

v.                                    :    JANUARY 26, 2017

                                        :

PACIFIC SPECIALTY INSURANCE COMPANY,    :
TOWER INSURANCE COMPANY         :
OF NEW YORK, and                 :
AMICA MUTUAL INSURANCE COMPANY    :

## COMPLAINT

NOW COME the plaintiffs, John Celentano and Tanessa Celentano, f/k/a Tanessa Morency, by their attorney, Jeffrey R. Lindequist, Esq., complaining of the defendants, Pacific Specialty Insurance Company, Tower Insurance Company of New York and Amica Mutual Insurance Company, as follows:

### COUNT I
### (Breach of Contract)

1.      The plaintiffs, John Celentano and Tanessa Celentano, f/k/a Tanessa Morency, own the residential property located at 54 Blair Road, Willington, Connecticut 06279.

2.      The defendant, Pacific Specialty Insurance Company (hereinafter "Pacific Specialty"), is an insurance company incorporated under the laws of the State of California and has a principal place of business at 3601 Haven Avenue, Menlo Park, California 94025. At all times material to this claim, the defendant was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut.

3.     The plaintiffs purchased the residential property located at 54 Blair Road, Willington, Connecticut in October of 2009.  The home was built in 1984.

4.     The plaintiffs insured the home at 54 Blair Road with a homeowner's insurance policy issued by Pacific Specialty between the years of 2009 and 2012.

5.     During this time, the plaintiffs paid the premium charged by Pacific Specialty each year and, without further action on the plaintiffs' part, the subject policy was automatically renewed by Pacific Specialty yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid.

6.     In mid-February, 2016, the plaintiffs noticed a series of horizontal and vertical cracks throughout the concrete basement walls of their home in connection with an unrelated insurance coverage claim.

7.     The plaintiffs immediately undertook an investigation of the "pattern cracking" condition, its cause, and the methods of repair by consulting with various contractors and professionals.

8.     Through this investigation, the plaintiffs learned that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain concrete basement walls constructed between the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

9.     The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand and cement necessary to form

the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

10.     There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

11.     At some point between the date on which the basement walls were poured and mid-February of 2016 the basement walls suffered a substantial impairment to their structural integrity.

12.     It is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil.

13.     With the falling in of the basement walls, the entire home will fall to the ground.

14.     The plaintiffs first learned of the existence of this substantial impairment in late February of 2016 and notified Pacific Specialty on or about May 26, 2016 of the condition of their basement walls.

15.     Thereby, the plaintiffs made a timely claim for coverage of the loss in accordance with the terms of all of the homeowner's policies issued to them by Pacific Specialty.

16.     Pacific Specialty denied the plaintiffs' claim for coverage by way of letter dated June 29, 2016, claiming that the homeowner's policies issued by Pacific Specialty do not afford coverage for the condition affecting their basement walls.

17.     Pursuant to the terms of the homeowner's policies issued to the plaintiffs, Pacific Specialty agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction.

18.     The grounds offered by Pacific Specialty for the denial of coverage are contrary to the express provisions of the homeowner's policies it issued to the plaintiffs.

19.     In denying coverage, as alleged, Pacific Specialty breached its contractual obligation under the homeowner's policies issued to the plaintiffs, all to the financial loss and damage of the plaintiffs.

20.     Based on the estimates of contractors who have performed replacements to the concrete basement walls of similar structures in the area of the plaintiffs' home, the cost of replacing the basement walls, along with the related restoration of the deck, landscaping, finished basement, driveway and walks, is expected to be not less than $260,000.00.

**COUNT II**
**(Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act)**

21.     The plaintiffs reallege in this Count II the allegations set forth in paragraphs 1 through 20 above as if the same were herein separately set forth.

22.     Pacific Specialty issued a homeowner's insurance policy to the plaintiffs that provides coverage for the collapse of an insured structure caused by hidden decay and the use of defective materials in construction.

23.     Pacific Specialty, upon information and belief, participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims.

24.     The ISO is also instrumental in drafting policy provisions and it prepares interpretations or advice as to the meaning of these provisions.

25.     Pacific Specialty has not informed its policy holders, including the plaintiffs, of its participation in or of the operations of the ISO.

26.     Through the ISO, Pacific Specialty has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the plaintiffs' home. For the purpose of identification, such claims are referred to as "concrete decay" claims.

27.     Through the ISO, Pacific Specialty has knowledge that most, if not all, insurers responding to concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes, such as:

      i.      ordinary wear and tear;

      ii.     water beneath the surface of the ground;

     iii.     earth movement and/or settling;

iv.     homeowner negligence in failing to waterproof the exterior of the concrete; or

v.      on the grounds that the claim was not presented in a timely manner.

28.     Through the ISO, Pacific Specialty has knowledge of cases such as *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530 (JCH), where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the plaintiffs' policy.

29.     Notwithstanding Pacific Specialty's knowledge of the specific policy provision offering coverage for the collapse of a building or any part of a building and the definition of the word "collapse" as it is used in such collapse provisions, Pacific Specialty gave the insured a knowingly false and misleading reason for the denial of coverage.

30.     By Pacific Specialty's denial of coverage on June 29, 2016 on untenable grounds, it has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of one or more of the series of homeowner's insurance policies issued to the plaintiff to the contrary.

31.     Pacific Specialty, based on the facts alleged in Count I above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim

which a reasonable person would determine is covered by one or more of the series of homeowner's insurance policies issued to the plaintiffs.

32.     Pacific Specialty, based in part on the facts alleged in paragraphs 23 through and including 30 above, has regularly been engaged, as part of its general business practice, in refusing to attempt in good faith to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear.

33.     Pacific Specialty's participation in the insurance industry wide practice of denying coverage for concrete decay claims as part of its general business practice is further confirmed by its refusal to provide coverage in at least one (1) other instance involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the plaintiffs' policy. *See Suvayu Ray, et al. v. Pacific Specialty Ins. Co.,* Connecticut Federal District Court Civil Action No. 3:15-cv-00871 (SRU).

34.     By failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice, Pacific Specialty has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act. *Conn. Gen. Stat.* § 38a-816(6)(F).

35.     By engaging in this conduct prohibited by the Connecticut Unfair Insurance Practices Act, Pacific Specialty has also violated the Connecticut Unfair Trade Practices Act. *Conn. Gen. State.* § 42-110a, *et seq.*

36.   As a direct cause of Pacific Specialty's unfair and deceptive trade practices, the plaintiffs have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

**COUNT III**
**(Breach of Contract)**

37.   The plaintiffs, John Celentano and Tanessa Celentano, f/k/a Tanessa Morency, own the residential property located at 54 Blair Road, Willington, Connecticut 06279.

38.   The defendant, Tower Insurance Company of New York (hereinafter "Tower"), is an insurance company incorporated under the laws of the State of New York and has a principal place of business at 120 Broadway, New York, New York 01027.  At all times material to this claim, the defendant was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut.

39.   The plaintiffs purchased the residential property located at 54 Blair Road, Willington, Connecticut in October of 2009.  The home was built in 1984.

40.   The plaintiffs insured the home at 54 Blair Road with a homeowner's insurance policy issued by Tower between the years of 2012 and 2013.

41.   During this time, the plaintiffs paid the premium charged by Tower each year and, without further action on the plaintiffs' part, the subject policy was

- 8 -

automatically renewed by Tower yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid.

42.    In mid-February, 2016, the plaintiffs noticed a series of horizontal and vertical cracks throughout the concrete basement walls of their home in connection with an unrelated insurance coverage claim.

43.    The plaintiffs immediately undertook an investigation of the "pattern cracking" condition, its cause, and the methods of repair by consulting with various contractors and professionals.

44.    Through this investigation, the plaintiffs learned that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain concrete basement walls constructed between the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

45.    The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand and cement necessary to form the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

46.    There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

47.     At some point between the date on which the basement walls were poured and mid-February of 2016 the basement walls suffered a substantial impairment to their structural integrity.

48.     It is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil.

49.     With the falling in of the basement walls, the entire home will fall to the ground.

50.     The plaintiffs first learned of the existence of this substantial impairment in late February of 2016 and notified Tower on or about August 16, 2016 of the condition of their basement walls.

51.     Thereby, the plaintiffs made a timely claim for coverage of the loss in accordance with the terms of all of the homeowner's policies issued to them by Tower.

52.     Tower denied the plaintiffs' claim for coverage by way of letter dated December 30, 2016, claiming that the homeowner's policies issued by Tower do not afford coverage for the condition affecting their basement walls.

53.     Pursuant to the terms of the homeowner's policies issued to the plaintiffs, Tower agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction.

54.     The grounds offered by Tower for the denial of coverage are contrary to the express provisions of the homeowner's policies it issued to the plaintiffs.

55.     In denying coverage, as alleged, Tower breached its contractual obligation under the homeowner's policies issued to the plaintiffs, all to the financial loss and damage of the plaintiffs.

56.     Based on the estimates of contractors who have performed replacements to the concrete basement walls of similar structures in the area of the plaintiffs' home, the cost of replacing the basement walls, along with the related restoration of the deck, landscaping, finished basement, driveway and walks, is expected to be not less than $260,000.00.

## COUNT IV
### (Unfair and Deceptive Practices in Violation of the Connecticut Unfair Insurance Practices Act and the Connecticut Unfair Trade Practices Act)

57.     The plaintiffs reallege in this Count IV the allegations set forth in paragraphs 37 through 56 above as if the same were herein separately set forth.

58.     Tower issued a homeowner's insurance policy to the plaintiffs that provides coverage for the collapse of an insured structure caused by hidden decay and the use of defective materials in construction.

59.     Tower, upon information and belief, participates in the Insurance Services Office, Inc., ("ISO") which is a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims.

60.    The ISO is also instrumental in drafting policy provisions and it prepares interpretations or advice as to the meaning of these provisions.

61.    Tower has not informed its policy holders, including the plaintiffs, of its participation in or of the operations of the ISO.

62.    Through the ISO, Tower has knowledge of the number of claims in northeastern Connecticut that have arisen due to the form of hidden decay in the concrete of the basement walls of residential structures similar to the plaintiffs' home. For the purpose of identification, such claims are referred to as "concrete decay" claims.

63.    Through the ISO, Tower has knowledge that most, if not all, insurers responding to concrete decay claims in residential structures in northeastern Connecticut have attempted to deny coverage on the grounds that the condition is the result of one or more excluded causes, such as:

    i.      ordinary wear and tear;

    ii.     water beneath the surface of the ground;

    iii.    earth movement and/or settling;

    iv.     homeowner negligence in failing to waterproof the exterior of the concrete; or

    v.      on the grounds that the claim was not presented in a timely manner.

64.    Through the ISO, Tower has knowledge of cases such as *Bacewicz v. NGM Insurance*, Connecticut Federal District Court Civil Action No. 3:08-CV-01530

- 12 -

(JCH), where the plaintiffs were awarded judgment against the insurer on a concrete decay claim based on policy language nearly identical to that in the plaintiffs' policy.

65.    Notwithstanding Tower's knowledge of the specific policy provision offering coverage for the collapse of a building or any part of a building and the definition of the word "collapse" as it is used in such collapse provisions, Tower gave the insured a knowingly false and misleading reason for the denial of coverage.

66.    By Tower's denial of coverage on December 30, 2016 on untenable grounds, it has become a part of or confirmed its participation in an insurance industry wide practice of denying coverage for concrete decay claims, notwithstanding the clear provisions of one or more of the series of homeowner's insurance policies issued to the plaintiff to the contrary.

67.    Tower, based on the facts alleged in Count III above, has failed to attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear; as it has arbitrarily refused to pay a claim which a reasonable person would determine is covered by one or more of the series of homeowner's insurance policies issued to the plaintiffs.

68.    Pacific Specialty, based in part on the facts alleged in paragraphs 59 through and including 66 above, has regularly been engaged, as part of its general business practice, in refusing to attempt in good faith to effectuate prompt, fair and equitable settlements of concrete decay claims in which liability has become reasonably clear.

69.     By failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear as part of its general business practice, Pacific Specialty has engaged in conduct proscribed by the Connecticut Unfair Insurance Practices Act. *Conn. Gen. Stat.* § 38a-816(6)(F).

70.     By engaging in this conduct prohibited by the Connecticut Unfair Insurance Practices Act, Pacific Specialty has also violated the Connecticut Unfair Trade Practices Act. *Conn. Gen. State.* § 42-110a, *et seq.*

71.     As a direct cause of Tower's unfair and deceptive trade practices, the plaintiffs have suffered loss and damages including loss of moneys owed pursuant to their contract of insurance, as already set forth herein, as well as related court costs and attorney's fees to bring suit to litigate their claim, along with the loss of interest on funds due them under said policy or policies of insurance.

### COUNT V
### (Declaratory Judgment)

72.     The plaintiffs, John Celentano and Tanessa Celentano, f/k/a Tanessa Morency, own the residential property located at 54 Blair Road, Willington, Connecticut 06279.

73.     The defendant, Amica Mutual Insurance Company (hereinafter "Amica"), is an insurance company incorporated under the laws of the State of Rhode Island and has its principal place of business at 100 Amica Way, Lincoln, Rhode Island 02940. At all times material to this claim, the defendant was engaged in the business of writing homeowner's insurance policies and issuing such policies to residents of various states, including residents of the State of Connecticut.

- 14 -

74.     The plaintiffs purchased the residential property located at 54 Blair Road, Willington, Connecticut in October of 2009.  The home was built in 1984.

75.     The plaintiffs insured the home at 54 Blair Road with a homeowner's insurance policy issued by Amica since the year 2013.

76.     During this time, the plaintiffs paid the premium charged by Amica each year and, without further action on the plaintiffs' part, the subject policy was automatically renewed by Amica yearly subject to the payment of the related premiums, all of which were timely and satisfactorily paid.

77.     In mid-February, 2016, the plaintiffs noticed a series of horizontal and vertical cracks throughout the concrete basement walls of their home in connection with an unrelated insurance coverage claim.

78.     The plaintiffs immediately undertook an investigation of the "pattern cracking" condition, its cause, and the methods of repair by consulting with various contractors and professionals.

79.     Through this investigation, the plaintiffs learned that the form of "pattern cracking" found in the basement walls of their home was due to a chemical compound found in certain concrete basement walls constructed between the late 1980s and the early 1990s with concrete most likely from the J.J. Mottes Concrete Company.

80.     The aggregate used by the J.J. Mottes Concrete Company in manufacturing the concrete in that particular time period contained a chemical compound which, with its mixture with the water, sand and cement necessary to form

the concrete, began to oxidize (rust) and expand, breaking the bonds of the concrete internally and reducing it to rubble.

81.    There is no known scientific or engineering method or process which is effective in reversing the deterioration, it continues to advance with or without the presence of visible water.

82.    At some point between the date on which the basement walls were poured and mid-February of 2016 the basement walls suffered a substantial impairment to their structural integrity.

83.    It is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil.

84.    With the falling in of the basement walls, the entire home will fall to the ground.

85.    The plaintiffs first learned of the existence of this substantial impairment in late February of 2016 and notified Amica on or about May 26, 2016 of the condition of their basement walls.

86.    Thereby, the plaintiffs made a timely claim for coverage of the loss in accordance with the terms of all of the homeowner's policies issued to them by Amica.

87.    Pursuant to the terms of the homeowner's policies issued to the plaintiffs, Amica agreed to provide coverage for the collapse of a building or any part of a building caused by hidden decay or the use of defective materials or methods in construction.

88.    The basement walls of the plaintiffs' home are in a state of collapse, which collapse was the result of a covered cause.

89.     The damage suffered to the basement walls of the plaintiffs' home is a covered loss under the terms of one or more of the Homeowner's Policies issued by Amica during the years that it covered their home.

90.     Amica has begun investigation of the plaintiffs' claim and dispatched an adjuster and engineer to view the property and remove core samples for scientific testing.

91.     Amica has made no decision with respect to coverage, but has not, at this time given any indication that it at all intends to provide coverage for the damage to the plaintiffs' home.

92.     Amica has denied claims with respect to this condition on at least three (3) occasions and the plaintiffs fully expect that Amica will dispute coverage in this matter. See *James T. Ainsworth, et al. v. Amica Mut. Ins. Co.,* Connecticut Federal District Court Civil Action No. 3:16-cv-01139 (MPS); *Francis J. Boucher, et al. v. Amica Mut. Ins. Co.,* Tolland Superior Court Docket No. TTD-CV-6004826-S; *Michael Roberts, et al. v. Amica Mut. Ins. Co.,* Connecticut Federal District Court Civil Action No. 3:14-cv-01589 (SRU).

93.     The policies issued to the plaintiffs by Amica all contain a suit limitation provision.

94.     Amica's inaction with respect to the plaintiffs' claim has placed their rights in jeopardy due to the passage of time.

95.     There is an actual controversy with respect to the coverage afforded by one or more of the Homeowner's Policies issued by Amica to the plaintiffs during the years it covered the property.

96.     All persons who have an interest in the subject matter of the requested declaratory judgment have been served with this Complaint and made parties, or have been given notice by certified mail.

WHEREFORE, the plaintiffs, John Celentano and Tanessa Celentano, f/k/a Tanessa Morency, claim the following relief against the defendants, Pacific Specialty Insurance Company, Tower Insurance Company of New York and Amica Mutual Insurance Company, on each count:

1.     Just fair and reasonable money damages as to the defendants Pacific Specialty Insurance Company and Tower Insurance Company of New York;

2.     Pre judgment and post judgment interest pursuant to *Conn. Gen. Stat* § 37-3a and any other applicable statutes as to the defendants Pacific Specialty Insurance Company and Tower Insurance Company of New York;

3.     Attorney's fees and costs pursuant to *Conn. Gen. Stat*. §42-110g and any other applicable statute as to the defendants Pacific Specialty Insurance Company and Tower Insurance Company of New York;

- 18 -

4.   Punitive damages pursuant to *Conn. Gen. Stat.* §42-110g as to the
defendants Pacific Specialty Insurance Company and Tower Insurance
Company of New York;

5.   A declaration that the defendant, Amica Mutual Insurance Company, has
a duty to provide coverage for the damage suffered to the plaintiffs' home;

6.   Such other and further relief as the court deems just and equitable.

PLAINTIFFS,
JOHN CELENTANO and
TANESSA CELENTANO, f/k/a
TANESSA MORENCY

BY: _____
Jeffrey R. Lindequist, Esq.
Law Office of Michael D. Parker
One Monarch Place, Suite 2220
Springfield, MA 01144
Telephone: (413) 736-4101
Facsimile: (413) 736-4582
jlindequist@mdparkerlaw.com
Juris No. 435042

ATTEST:
A TRUE COPY
CHARLES J. LILLEY
CONNECTICUT MARSHAL
HARTFORD COUNTY

- 19 -

RETURN DATE:  FEBRUARY 21, 2017          :          SUPERIOR COURT

                                         :

JOHN CELENTANO and                       :          J.D. OF TOLLAND
TANESSA CELENTANO, f/k/a                  :
TANESSA MORENCY                          :          AT ROCKVILLE

                                         :

v.                                       :          JANUARY 26, 2017

                                         :

PACIFIC SPECIALTY INSURANCE COMPANY,     :
TOWER INSURANCE COMPANY                  :
OF NEW YORK, and                         :
AMICA MUTUAL INSURANCE COMPANY           :

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest or property in demand is not less than $15,000.00, exclusive of interest and costs.

                              **PLAINTIFFS,**
                              **JOHN CELENTANO and**
                              **TANESSA CELENTANO, f/k/a**
                              **TANESSA MORENCY**


                              BY: _____
                                  Jeffrey R. Lindequist, Esq.
                                  Law Office of Michael D. Parker
                                  One Monarch Place, Suite 2220
                                  Springfield, MA 01144
                                  Telephone: (413) 736-4101
                                  Facsimile: (413) 736-4582
                                  jlindequist@mdparkerlaw.com
                                  Juris No. 435042

RETURN DATE:  FEBRUARY 21, 2017      :      SUPERIOR COURT

                                                           :

JOHN CELENTANO and                        :      J.D. OF TOLLAND
TANESSA CELENTANO, f/k/a              :
TANESSA MORENCY                       :      AT ROCKVILLE

                                                            :

v.                                                     :      JANUARY 26, 2017

                                                            :

PACIFIC SPECIALTY INSURANCE COMPANY,      :
TOWER INSURANCE COMPANY                :
OF NEW YORK, and                              :
AMICA MUTUAL INSURANCE COMPANY        :

## NOTICE PURSUANT TO PRACTICE BOOK § 17-56(b)

The plaintiffs hereby certify, pursuant to Practice Book § 17-56(b), that all persons interested in this action have been joined as parties.

                                 **PLAINTIFFS,**
                                 **JOHN CELENTANO and**
                                 **TANESSA CELENTANO, f/k/a**
                                 **TANESSA MORENCY**

                 BY:  _____
                         Jeffrey R. Lindequist, Esq.
                         Law Office of Michael D. Parker
                         One Monarch Place, Suite 2220
                         Springfield, MA 01144
                         Telephone: (413) 736-4101
                         Facsimile: (413) 736-4582
                         jlindequist@mdparkerlaw.com
                         Juris No. 435042

RETURN DATE:  FEBRUARY 21, 2017       :       SUPERIOR COURT

      :

JOHN CELENTANO and       :       J.D. OF TOLLAND

TANESSA CELENTANO, f/k/a       :

TANESSA MORENCY       :       AT ROCKVILLE

      :

v.       :       JANUARY 26, 2017

      :

PACIFIC SPECIALTY INSURANCE COMPANY,       :

TOWER INSURANCE COMPANY       :

OF NEW YORK, and       :

AMICA MUTUAL INSURANCE COMPANY       :

## CERTIFICATE OF FINANCIAL RESPONSIBILITY

I hereby certify, pursuant to P.B. § 8-4(a), that I have personal knowledge of the financial responsibility of the plaintiffs and deem them sufficient to pay the costs of this action.

      **PLAINTIFFS,**
      **JOHN CELENTANO and**
      **TANESSA CELENTANO, f/k/a**
      **TANESSA MORENCY**

      BY: _____
         Jeffrey R. Lindequist, Esq.
         Law Office of Michael D. Parker
         One Monarch Place, Suite 2220
         Springfield, MA 01144
         Telephone: (413) 736-4101
         Facsimile: (413) 736-4582
         jlindequist@mdparkerlaw.com
         Juris No. 435042